**LOCKE LORD LLP**
Matthew T. Furton, *Pro Hac Vice*
*mfurton@lockelord.com*
111 S. Wacker Drive, Suite 4100
Chicago, IL 60606
Telephone:  312 443-0700
Facsimile:   312 443-0336

**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:  714 445-1000
Facsimile:   714 445-1002

Attorneys for Defendants Richard J. Covelli, JTR, LLC,
C2 Advisors, LLC, and C & C Marketing LLC

**Locke Lord LLP**
**111 South Wacker Drive**
**Chicago, IL 60606**

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>FREEDOM COMMUNICATIONS, INC., a Delaware Corporation, *et al.*,<br><br>                      Debtor. | Case No. 8:15-bk-15311-MW<br><br>Chapter 11<br><br>Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS of FREEDOM COMMUNICATIONS, INC., et al., on behalf of FREEDOM COMMUNICATIONS, INC., FREEDOM COMMUNICATIONS HOLDINGS, INC. and 2100 FREEDOM, INC.,<br><br>                      Plaintiff,<br><br>     v.<br><br>AARON KUSHNER, ERIC SPITZ, RICHARD J. COVELLI, TRACI M. CHRISTIAN, LARRY P. CHINN, JTR, LLC, C & C MARKETING LLC, C2 ADVISORS, LLC, ETAROS ACTUARIAL SERVICES LLC and FINANCIAL INSTITUTION CONSULTING CORPORATION,<br><br>                      Defendants. | Adv No. 8:17-ap-01012-MW<br><br>**DEFENDANTS RICHARD J. COVELLI, JTR, LLC, C2 ADVISORS, LLC, AND C & C MARKETING LLC'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>**[Rebuttal to Plaintiff's Statement of Additional Material Facts and Request for Judicial Notice Filed Concurrently]**<br><br>**Hearing Information:**<br>**DATE:**    **September 18, 2019**<br>**TIME:**    **9:00 a.m.**<br>**CTRM:**   **6C**<br>          **411 West Fourth Street**<br>          **Santa Ana, California 92701** |

1

# <u>TABLE OF CONTENTS</u>

2                                                                                              <u>Page</u>

Preliminary Statement.................................................................................................6

Response to the Committee's Statement of Additional Material Facts ....................................7

Argument ...................................................................................................8

    I.    The North Carolina Defendants are Entitled to Summary Judgment on the
Claim for Aiding and Abetting Breach of Fiduciary Duty. .............................8

        A.    The Committee lacks standing to assert its aiding and abetting
claims. ..................................................................................8

            i.    The Committee is unable to claim multiple parties have
standing. ........................................................................8

            ii.    The Committee is unable to demonstrate that standing is
available merely through an increase in a debtor's liabilities....9

            iii.    The Committee's effort to focus on legal duties is a
distraction...................................................................11

            iv.    This case is not distant from Caplin and its progeny. ..............11

            v.    The $16 million payment does not provide standing...............12

        B.    The North Carolina Defendants are entitled to summary judgment
on their in pari delicto defense.............................................13

            i.    Delaware law governs the Committee's aiding and abetting
claims. ......................................................................14

            ii.    In pari delicto applies under Delaware law.............................17

            iii.    In pari delicto applies under California law............................19

    II.    The North Carolina Defendants are Entitled to Summary Judgment on the
Fraudulent Transfer Claims. .................................................20

    III.    The Committee's Opposition Does Not Justify Application of Rule 56(d).....22

Conclusion ...................................................................................24

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re American Business Financial Services, Inc.*,
 457 B.R. 314 (Bankr. D. Del. 2011) .................................................................. 14

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)........................................................................................... 20

*Berckeley Inv. Group, Ltd. v. Colkitt*,
 455 F.3d 195 (3d Cir. 2006)............................................................................... 21

*Bernstein v. Crazy Eddie*,
 702 F.Supp.962 (E.D.N.Y. 1988), *vacated on other grounds*, 714 F.Supp. 1285
 (E.D.N.Y. 1989) ................................................................................................. 15

*Boschetti v. Pacific Bay Investments Inc.*,
 32 Cal. App. 5th 1059, 244 Cal. Rptr. 3d 480 (Cal. Ct. App. 2019) ................. 14

*In re Brocade*,
 615 F.Supp.2d 1018 (N.D. Cal. 2009) ......................................................... 15, 16

*Buckley v. Deloitte & Touche USA LLP*,
 2007 WL 1491403 (S.D.N.Y. May 22, 2007) ................................................... 15

*Caplin v. Marine Midland Grace Trust Co.*,
 406 U.S. 416 (1972)...................................................................................8, 9, 11

*CarrAmerica Realty Corp v. NVIDIA Corp.*
 302 Fed.Appx. 514 (9th Cir. 2008)................................................................... 10

*Casey v. U.S. Bank Nat'l Assn.*,
 127 Cal.App.4th 1138, 26 Cal.Rptr.3d 401 (Cal. Ct. App. 2005) ..................... 14

*Coleman v. United Health Services of Georgia, Inc.*,
 344 Ga.App. 682, 812 S.E.2d 24 (Ga. Ct. App. 2018) ...................................... 20

*Cox v. Kentucky Dep't of Transportation*,
 53 F.3d 146 (6th Cir. 1995) ............................................................................... 21

*Donnel v. Nixon Peabody LLP*,
 2012 U.S. Dist. LEXIS 126146 (C.D. Cal. Sep. 5, 2012).................................. 10

*Food Holdings Ltd. v. Bank of Am. Corp.*
 423 Fed.Appx. 73 (2d Cir. 2011) and 684 F.Supp.2d 453 (S.D.N.Y. 2010) ........................ 9

*Giovannone v. Goodwin*
 930 F.2d 920 (9th Cir. 1991) ............................................................................. 12

**Locke Lord LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA 90071**

*Glidden Co. v. Jandernoa*,
   5 F.Supp.2d 541 (W.D. Mich. 1998) ......................................................................... 15

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995) ..................................................................................... 12

*Korotki v. Hillar & Arban, LLC*,
   2017 Del. Super. LEXIS 256 (Del. Super. Cr. May 23, 2017) ................................ 18

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................. 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................................. 21

*Mendelson v. Country Coach*,
   2007 WL 4811927 (C.D. Cal. Novm. 19, 2007) .................................................... 21

*In re Rare Coin Galleries of America, Inc.*,
   862 F.2d 896 (1st Cir. 1988) .................................................................................... 10

*Russell Rd. Food & Beverage, LLC v. Spencer*,
   829 F.3d 1152 (9th Cir. 2016) .................................................................................. 21

*Schacht v. Wisconsin Dep't of Corrections*,
   175 F.3d 497 (7th Cir. 1999) .................................................................................... 21

*Security & Exch. Comm'n v. Stein*,
   906 F.3d 823 (9th Cir. 2018) ........................................................................ 21, 22, 23

*Solow v. Stone*,
   994 F.Supp. 173 (S.D.N.Y. 1998) ........................................................................... 15

*State Farm Mut. Auto. Ins. Co. v. Superior Court*,
   114 Cal. App. 4th 434 ............................................................................................. 14

*Stewart v. Wilmongton Trust SP Services, Inc.*,
   112 A.3d 271 (Del. Ch. 2015) ....................................................................... 16, 17, 18

*Thabault v. Chait*
   541 F.3d 512, 520 (3rd Cir. 2008) ........................................................................... 10

*In re Verisign, Inc. Derivative Litigation*,
   531 F.Supp.2d 1173 (N.D. Cal. 2007) ..................................................................... 14

*Weinstock v. Columbia University*,
   224 F.3d 33 (2d Cir. 2000) ....................................................................................... 21

*Williams v. California 1st Bank*,
   859 F.2d 664 (9th Cir. 1988) .......................................................................... 8, 10, 12

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

4

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Statutes and Rules**

11 U.S.C. § 544(b) ................................................................................................... 23

11 U.S.C. § 548(a)(1)(B) .......................................................................................... 23

California Civil Code § 3439.04 ................................................................................ 23

California Civil Code § 3439.05 ................................................................................ 23

California Civil Code § 3439.07 ................................................................................ 23

Rule 12 ....................................................................................................................... 11

Rule 56 ................................................................................................................. 22, 23

Rule 56(d) .................................................................................................. 7, 21, 22, 23

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE:**

Defendants Richard J. Covelli, JTR, LLC, C2 Advisors, LLC, and C & C Marketing LLC (collectively, the "North Carolina Defendants"), respectfully submit this reply in support of their motion for summary judgment on all claims asserted against the North Carolina Defendants in the complaint filed by plaintiff Official Committee of Unsecured Creditors of Freedom Communications Inc., et al. (the "Committee").[1]

<u>**Preliminary Statement**</u>

The Committee's opposition does not show that the Committee has standing to assert its aiding and abetting claims. While the Committee engages in a number of rhetorical devices in an attempt to muddy the waters, none of the Committee's arguments or authority contradicts this reality: the only purported damages available in this case arise from claims made by the PBGC. The only such claim that the Debtors previously paid is unrelated to the North Carolina Defendants' actions, and thus cannot constitute damages in this case. So the Committee lacks a redressable injury, and thus lacks standing with respect to its aiding and abetting claim against the North Carolina Defendants.

Even if the Committee had standing to assert that claim, the North Carolina defendants would be entitled to summary judgment on the basis of their *in pari delicto* defense regardless of what state's law applies. Every court that has thoughtfully considered whether to apply the venue state's law or the state of a corporation's organization's law to an aiding and abetting breach of fiduciary duty claim has concluded that the state of organization's law governs both breach of fiduciary duty claims and claims for aiding and abetting that breach. Under the law of Delaware, which is the state of the Debtors' incorporation, *in pari delicto* indisputably applies here and would require judgment for the North Carolina Defendants unless an exception applies. Although the Committee argues that a Delaware exception for uniquely situated "trusted" parties applies, it identifies no facts supporting a conclusion that the North Carolina

---

[1] Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the North Carolina Defendants' motion for summary judgment (Dkt. 133).

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

1   Defendants are appropriate candidates for that exception. In the unlikely event California case

2   law is applied to the claims at issue, *in pari delicto* still applies here because a buyer (absent

3   fraud or duress, which have not been alleged in this case) is at least equally culpable—as

4   compared to a seller—for the results of the buyer's purchasing decision.

5   As to the Committee's fraudulent transfer claims, the term "Company" in the JTR Letter

6   Agreement unambiguously refers to the Pension Plan, and the Committee has failed to advocate

7   for or adduce any evidence of a reasonable contrary interpretation. The Debtors were neither

8   parties to the JTR Letter Agreement, nor could they have been bound by it, so "Company"

9   referring to Debtors would be nonsensical. Therefore, because nothing was transferred by the

10  Debtors through the JTR Letter Agreement, the North Carolina Defendants are entitled to

11  summary judgment on the fraudulent transfer claims.

12  Finally, the Committee's Rule 56(d) argument fails because the Committee did not

13  identify specific facts that further discovery would reveal, much less show that discovery of

14  those facts would be essential to preparing an opposition to the pending summary judgment

15  motion. Indeed, the Committee's detailed opposition papers demonstrate that it presently has

16  access to evidence it considers necessary to argue about the Debtors' damages, the Debtors'

17  culpability, and the meaning of an agreement alleged to be potentially binding on the Debtors,

18  all of which are matters within the control of the Debtors on whose behalf the Committee is

19  acting.

20  **<u>Response to the Committee's Statement of Additional Material Facts</u>**

21  The Committee responded to the North Carolina Defendants' articulation of undisputed

22  material facts with a remarkably verbose submission. But nothing in the Committee's factual

23  submission prevents entry of summary judgment in North Carolina Defendants' favor. The

24  Committee's asserted facts are largely immaterial to the issues raised in the pending motion.

25  Even accounting for the Committee's additional facts (leaving aside those facts that

26  mischaracterize the evidence, as discussed in the North Carolina Defendants' separately filed

27  Rebuttal to Plaintiff's Statement of Additional Material Facts), there is no genuine dispute as to

28  the fact that the Committee's claimed damages derive entirely from the PBGC's claims against

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

the Debtors filed in the main bankruptcy proceeding. Similarly, there is no genuine dispute that Kushner and Spitz purchased (on behalf of the Pension Plan) the insurance-related investments at issue in this case. And the Committee has failed to come forward with any evidence supporting its supposition that "Company" in the JTR Letter Agreement refers to the Debtors. The additional "facts" submitted by the Committee do not bear on these undisputed factual matters.

**Argument**

**I.    The North Carolina Defendants are Entitled to Summary Judgment on the Claim for Aiding and Abetting Breach of Fiduciary Duty.**

A.    The Committee lacks standing to assert its aiding and abetting claims.

The Committee's opposition fails to demonstrate the Committee's standing to assert its claims for aiding and abetting breach of fiduciary duty. The Committee has now had the opportunity to come forward with evidence to demonstrate that the estate has been harmed and that the estate was a victim of the defendants' acts. Although the Committee claims the Debtor was a "victim" (Opp. at 29), the Committee is unable to identify actual damages *to the estate*. Under *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972) and *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988), an estate acting through a trustee or unsecured creditors committee may not pursue claims that are not owned by the estate. That is, a committee acting in the place of a debtor may not pursue claims on behalf of third parties.

The Committee does not deny this black letter principle. Instead, the Committee seeks to avoid application of this principle through a number of devices. None of the rhetorical devices pursued by the Committee have any merit.

i.    The Committee is unable to claim multiple parties have standing.

The Committee's first attempt at avoiding what is commonly called the *Caplin* rule is through noting cases that stand for the proposition that, sometimes, the Debtor and third parties both have standing because they have both been injured by the defendants' conduct. (Opp. at 26.) This observation has no application to this case because invoking the benefits of this "two-plaintiffs-are-sometimes-proper" rule requires both plaintiffs to be injured by the defendants

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

1   and here, there is no evidence that the Debtors have been damaged by defendants. That is, the

2   Committee has not come forward with any evidence that the Debtors suffered any damages as a

3   result of investments made by the Pension Plan that were allegedly made with an intent to also

4   reduce the Debtors' pension obligations. The Committee presented no evidence that the Debtors

5   paid a penny for the investments promoted by the North Carolina Defendants. The Committee

6   presented no evidence that the Debtor's assets were reduced in any way as a result of conduct

7   by the North Carolina Defendants.[2]  Without losses to the Debtors traceable to the North

8   Carolina Defendants, the Committee is unable to claim that it is one of two parties with

9   standing to recover from the North Carolina Defendants.

10           ii.      The Committee is unable to demonstrate that standing is available merely

11                    through an increase in a debtor's liabilities.

12          The Committee's second device to avoid the *Caplin* rule involves a string cite following

13  a disjunctive statement that debtors have cognizable injuries if they either have depletion of

14  assets *or* an increase in liabilities. (Opp. at 26.) This device has no merit. As an initial matter,

15  the Committee never explains why depleted asset cases deserve discussion. There are no

16  depleted assets associated with the North Carolina Defendants. There is no evidence that the

17  North Carolina Defendants took a penny from the Debtors. Instead, this is an adversary

18  proceeding driven by the fact that the PBGC asserted three claims in the Debtors' bankruptcy

19  proceeding for nearly $200 million. (Plaintiff's Statement of Genuine Issues and Additional

20  Material Facts ("AMF") Nos. 4-5.)

21          The Committee doesn't expressly say it, but it hints through its string cite that, maybe,

22  increased liabilities are enough to give a debtor standing. That's false. No authorities, including

23  the ones string cited by the Committee (Opp. at 26) stand for the alleged proposition that a

24  debtors has standing to sue even if there was not a depletion of the debtor's assets. Indeed, the

25  Committee never actually even argues as much, preferring to stand behind a disjunctive

26  statement that either reduced assets *or* increased liabilities is sufficient to confer standing.

27

28  [2] As discussed below in Section I.A.v., the Debtors' $16M payment to the PBGC is unrelated to the insurance-related
    investments at issue in this case.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

1    Although the long parentheticals included in the Committee's string cite suggest support

2  for the proposition that increased liabilities standing alone confer standing, the Committee's

3  string-cited authorities have no application to this case. Two of the cases, *Food Holdings Ltd. v.*

4  *Bank of Am. Corp.* 423 Fed.Appx. 73 (2d Cir. 2011) and 684 F.Supp.2d 453 (S.D.N.Y. 2010)

5  and *Donnel v. Nixon Peabody LLP,* 2012  U.S. Dist. LEXIS 126146 (C.D. Cal. Sep. 5, 2012)

6  are not bankruptcy cases. Thus, there is nothing in them that could provide support for the

7  notion that a debtor's alleged liabilities to a creditor could provide the debtor with standing to

8  seek to recover funds due to the creditor.

9    As for the bankruptcy cases cited by the Committee in its string cite, none of them

10  found standing solely on the basis of increased liabilities. Standing was found in *In re Rare*

11  *Coin Galleries of America, Inc.* because the debtor paid out funds, including the cost of

12  accountant services, the cost of commissions the debtor paid to financial planners, and the

13  misappropriation of assets by the debtor's principals. *See* 862 F.2d 896, 899 (1st Cir. 1988).

14  Such asset depletion is simply not present in this case. Similarly, *Thabault v. Chait* involved an

15  insolvent insurance company that sold insurance coverage for insufficient premium to offset the

16  cost of providing that coverage. *See* 541 F.3d 512, 520 (3rd Cir. 2008). The court found the

17  debtor to have a concrete injury to support standing because "the continued writing of insurance

18  policies, had an impact on [the debtor's] solvency." *Id.* That is not surprising, considering that

19  selling services for less than the costs of services sold depletes the selling party's assets. Of

20  course, the Committee itself noted in its opposition that *CarrAmerica Realty Corp v. NVIDIA*

21  *Corp.* 302 Fed.Appx. 514, 516 (9th Cir. 2008) found a trustee to have standing to assert a

22  debtor's claims because 'depleting the assets available for the bankruptcy estate constitutes an

23  injury to the corporation itself.'" (Opp. at 27.) No surprise there. The problem for the

24  Committee is that there has not been a depletion of the Debtors' assets in this case.

25    The Committee has tried valiantly to suggest that incurring liabilities alone is sufficient

26  to confer standing for an adversarial proceeding. The reality is, however, that no court has

27  actually reached that conclusion. The authorities on standing all point to *Williams v. California*

28  *1st Bank,* 859 F.2d 664 (9th Cir. 1988) where the Ninth Circuit made clear that debtors or their

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

1  representatives may not seek to recover for creditors even with the creditors' blessing. The

2  bankruptcy code simply does not grant debtors with the power to litigate for the benefit of

3  others.

4         iii.    <u>The Committee's effort to focus on legal duties is a distraction.</u>

5       The Committee's third device to avoid the *Caplin* rule involves an effort to characterize

6  the standing issue presented by the North Carolina Defendants' motion as identical to their

7  argument in a Rule 12 motion. But the Rule 12 argument was that the Committee's claims arise

8  out of duties Defendants Kushner and Spitz allegedly breached in their roles as Pension

9  Trustees, not Debtors' officers. The issue before the Court on the present motion is not the

10  identity to whom duties ran for two individuals that "wore multiple hats," sometimes working

11  for Debtors and sometimes working for the Pension Plan. It simply does not matter, for the

12  purposes of the present motion, whether Kushner and Spitz's Pension Plan investment decisions

13  implicated their fiduciary duties to the Debtors. The issue is whether the Debtors were harmed

14  by the North Carolina Defendants' conduct. The answer is "no." The Committee's suggestion

15  that the Court examine the parties to whom legal duties were owed is nothing more than a

16  distraction from the directive of *Caplin*, which is to make sure the plaintiff is seeking money

17  owed to the estate.

18         iv.    <u>This case is not distant from *Caplin* and its progeny.</u>

19       The Committee's fourth device to avoid application of the *Caplin* rule is an effort to

20  distinguish *Caplin* and its progeny. Like an anaconda's prey, the more the Committee seeks to

21  wiggle away from *Caplin* and its progeny, the tighter it finds the grip of that line of cases.

22       The Committee's discussion of *Caplin* notes that the trustee in *Caplin* was seeking to

23  assert the claims of a specific class of creditors and suggests that the Committee in this case is

24  doing something different. (Opp. at 27-28.) That's simply not true. The Committee has had the

25  opportunity to articulate its damages in its opposition and has identified nothing in the nature of

26  harm to the Debtors other than substantial claims filed by the PBGC. There is no evidence of

27  funds paid by the Debtors to the North Carolina Defendants. The North Carolina Defendants

28  did not take any money from the Debtors. All the Committee can muster is that the PBGC has

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

filed claims worth nearly $200 million as a result of investments made by a Pension Plan that is not a party to this action. (*See, e.g.,* AMF Nos. 4-5.)

The leading Ninth Circuit case, *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988) is similarly fatal to the Committee's claims. Although the Committee accurately notes that *Williams* involved a situation where a trustee lacked standing to assert claims creditors assigned to the trustee (Opp. at 28), the Committee speciously argues that the present case is different. (*See id.*) The Committee claims this case is different because here, the Committee is seeking to enforce duties owed to the Debtors. (*See id.*) Again, this focus on duties is a red herring. Standing is a question about injury and redress. Standing is not a question of duty. It simply doesn't matter that Kushner and Spitz may have owed duties to both the Pension Plan and the Debtors because the Debtors have no injury in fact. Without an injury, there is no "case or controversy" sufficient to invoke the power of a federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

The Committee observes that *Giovannone v. Goodwin*, 930 F.2d 920 (9th Cir. 1991) is a non-precedential Ninth Circuit case, which is a fact that was disclosed by the North Carolina Defendants. As for the final case, *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir. 1995), the Committee notes that the Second Circuit applied the well-established rule that bankruptcy trustees may not pursue claims unless the debtor has an injury. Collectively, the authorities presented by the parties on the issue of standing present a clear rule that a debtor must have incurred an injury caused by the defendant for the debtor (or its representative) to have standing, and that this injury cannot consist of a mere alleged increase in liabilities. Unfortunately for the ambitious Committee in this case, there are no actual damages here.

v.    The $16 million payment does not provide standing.

In a tellingly marginalized way, the Committee throws in at the end of its standing argument that it *also* has damages in the nature of a payment from the Debtor to the PBGC of $16 million. (Opp. at 30.) Although an actual payment like this might, under different circumstances, provide the Committee with standing to pursue claims against the North Carolina Defendants, the referenced $16 million payment does not constitute damages in this

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    case because the claim that led to the lien and the subsequent payment are unrelated to the

2    North Carolina Defendants' conduct, and the Committee does not contend otherwise.

3          PBGC's Claim No. 505-1—previously paid by the Debtors—is the only potential

4    evidence of a redressable injury cited by the Committee. (*See* Opp. at 3, 5, 29-30.) That claim

5    arose from six separate PBGC liens on the Debtors' property, which were perfected in August

6    2014, September 2014, November 2014, March 2015, June 2015, and September 2015. (*See*

7    Opp. Ex. 6, at 7-8.) Critically, these liens (and therefore Claim No. 505-1) are based on unpaid

8    minimum funding contributions, as calculated for the Pension Plan years ending 2013 and

9    2014. (*See* Opp. Ex. 6, at 2, 5.) But the Pension Plan had not made any of the insurance-related

10    investments at issue by the end of 2013. The Pension Plan financial statements accounting for

11    the value of the insurance-related investments as of the end of 2014 were not completed until

12    March 2016, long after the PBGC had asserted claims and perfected the final lien reflected in

13    Claim No. 505-1. (*See* Opp. Ex. 3; *see also* AMF No. 55.) Thus, the contribution obligations

14    underlying Claim No. 505-1 could not have—and did not—arise from the North Carolina

15    Defendants' conduct. An unrelated PBGC claim for failure to fund the Pension Plan is hardly

16    surprising, given the Committee's undisputed allegation that the Pension Plan was underfunded

17    by more than $100 million at the time Kushner and Spitz joined the Debtors. (*See* Complaint,

18    Dkt. 1, at ¶¶ 24, 31.) Notably, the Committee proffered no evidence that Claim No. 505-1

19    relates to the North Carolina Defendants' conduct.

20          Because there is no relationship between the alleged aiding and abetting and the

21    PBGC's Claim No. 505-1, the only "damages" asserted by the Committee against the North

22    Carolina Defendants are rooted in claims asserted by the PBGC in the bankruptcy proceeding.

23    Those do not amount to a redressable injury, so the Committee has no standing to assert its

24    aiding and abetting claim.

25         B.    The North Carolina Defendants are entitled to summary judgment on their *in*

26            *pari delicto* defense.

27          This Court should follow well-reasoned authority and avoid potentially inconsistent

28    results by applying Delaware law to the aiding and abetting claims. The only case the

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    Committee cites to support application of California law to claims for aiding and abetting

2    breach of fiduciary duty contained no written analysis, and cited only to one inapposite case.

3        Under Delaware law, *in pari delicto* applies to this case because there is no exception

4    that applies to sales entities and salespeople—who are quite unlike auditors and law firms

5    because they do not occupy a position of trust or materially participate in the discharge of an

6    insider's fiduciary duties.

7        *In pari delicto* applies in this case under California law as well because, in the absence

8    of fraud or duress, it is not possible for a seller to be more culpable than a buyer.

9            i.    Delaware law governs the Committee's aiding and abetting claims.

10       The Committee does not contest—nor can it—that Delaware law applies to its claims

11    for breach of fiduciary duty by virtue of the internal affairs doctrine. *See, e.g., Boschetti v.*

12    *Pacific Bay Investments Inc.*, 32 Cal. App. 5th 1059, 1066-67, 244 Cal. Rptr. 3d 480 (Cal. Ct.

13    App. 2019); *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434, 442-49,

14    Cal. Rptr. 3d 56 (Cal. Ct. App. 2003); *In re Verisign, Inc. Derivative Litigation*, 531 F.Supp.2d

15    1173, 1214 (N.D. Cal. 2007). Yet the Committee would have this Court apply California law to

16    its claims for aiding and abetting that same alleged breach. (Opp. at 17-18.)[3]

17       The Committee's suggested approach—in which a court applies one state's law to

18    claims for breach of fiduciary duty and another state's law to claims for aiding and abetting the

19    same alleged breach—can lead to absurd results. Under both California and Delaware law, an

20    underlying breach of fiduciary duty is a necessary element of aiding and abetting breach of

21    fiduciary duty. *See, e.g., Casey v. U.S. Bank Nat'l Assn.*, 127 Cal.App.4th 1138, 1144, 26

22    Cal.Rptr.3d 401 (Cal. Ct. App. 2005); *In re American Business Financial Services, Inc.*, 457

23    B.R. 314, 322 (Bankr. D. Del. 2011). So under the Committee's suggested approach, if a certain

24    act constitutes a breach of fiduciary duty in the forum state (e.g. California) but not in the state

25    of incorporation (e.g. Delaware), a party could be held liable for aiding and abetting a breach of

---

[3] The Committee claims that the North Carolina Defendants "conceded" the application of California law to the aiding and abetting claims by citing California law in their motion to dismiss. The implication—unsupported by any citation to authority—is that now this Court is somehow required to apply California law, regardless of the correct choice-of-law outcome. But no legal doctrine supports this notion, whether judicial estoppel, equitable estoppel, waiver, law of the case, or anything else. The Committee does not suggest otherwise.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

fiduciary duty while the fiduciary would be held not liable for a breach of fiduciary duty. This is patently absurd and no court has endorsed the Committee's suggested approach to choice of law in an aiding and abetting breach of fiduciary duty case after a thoughtful analysis. The courts that have considered this issue in a thoughtful way have held that the state of incorporation's law applies to both breach of fiduciary duty claims and claims for aiding and abetting that same alleged breach. *See, e.g., See, e.g., Buckley v. Deloitte & Touche USA LLP*, 2007 WL 1491403, \*13 (S.D.N.Y. May 22, 2007); *Glidden Co. v. Jandernoa*, 5 F.Supp.2d 541, 554 (W.D. Mich. 1998); *Bernstein v. Crazy Eddie*, 702 F.Supp.962, 986 (E.D.N.Y. 1988), *vacated on other grounds*, 714 F.Supp. 1285 (E.D.N.Y. 1989).

The Committee cites *In re Brocade*, 615 F.Supp.2d 1018 (N.D. Cal. 2009) for the proposition that California law governs claims for aiding and abetting breach of fiduciary duty. (Opp. at 17.) But *Brocade* is neither controlling nor persuasive. The *Brocade* court did not engage in any written analysis before concluding that it was "not convinced" that the internal affairs doctrine applies to claims brought against non-fiduciaries. 615 F.Supp.2d at 1036. The court in *Brocade* did not explain why it ruled as it did, and it is unlikely to have considered the ramifications of applying two states' laws to a single alleged breach. Moreover, the only case the *Brocade* court cited in support of this conclusion—*Solow v. Stone*, 994 F.Supp. 173 (S.D.N.Y. 1998)—did not involve an analogous claim. In *Solow*, the plaintiff was a landlord who asserted that a tenant's insiders had aided and abetted the ***tenant entity's breach of fiduciary duty owed to the landlord***. *See Solow*, 994 F.Supp. at 180. Thus, for the purposes of the aiding and abetting claim in *Solow*, neither the alleged underlying breach nor the aiding and abetting of that breach involved ***an insider's duty to the entity***, and so neither that breach nor the aiding and abetting of it involved the internal affairs of the corporation. The *Brocade* court did not explain why it relied on *Solow* to support its conclusion, while ignoring contrary conclusions from well-reasoned cases like *Bernstein*, *Buckley*, and *Jandernoa*, each of which involved more analogous aiding and abetting claims in which the underlying breach was of a fiduciary duty owed by insiders to the entity.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

The Committee claims that California's "governmental interest analysis" also supports its specious assertion that California law should govern its aiding and abetting breach of fiduciary duty claim against the North Carolina Defendants while Delaware law governs its breach of fiduciary duty claim against Kushner and Spitz. (Opp. at 17.) In doing so, the Committee argues that the purported harm in this case was "inflicted" in California, and suggests that the more general governmental interest analysis outweighs the more specific internal affairs doctrine. But that approach fails to address the fact that California law not would govern the Committee's breach of fiduciary duty claim, even though the purported harm associated with that claim is identical to the purported harm associated with the aiding and abetting claims. There is no dispute that Delaware law governs the breach of fiduciary duty claim, no matter where the purported harm was inflicted. So it is clear that the governmental interest analysis must give way to the internal affairs doctrine.

And even if this Court were inclined to engage in an analysis that compared the relative interest of the two states, the Court must account for Delaware's interest in regulating claims for aiding and abetting breach of fiduciary duty (regardless of where the harm may have occurred). In *Stewart v. Wilmington Trust SP Services, Inc.*, while discussing claims for aiding and abetting breach of fiduciary duty owed to Delaware entities, the Court of Chancery of Delaware emphasized "the importance of [Delaware courts'] ability to adjudicate ***core fiduciary duty claims*** arising out of entities organized under Delaware law." 112 A.3d 271, 319 (Del. Ch. 2015) (emphasis added). Therefore, Delaware has a stated interest in regulating the Committee's aiding and abetting claim, which it considers to be a "core fiduciary duty claim." *See id.* (describing a claim for aiding and abetting breach of fiduciary duty as a core fiduciary duty claim under Delaware law).

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This Court should not repeat the *In re Brocade* court's mistake and fail to assess choice of law with precision. Instead, this Court should follow the better-reasoned authority, avoid potentially inconsistent results, and defer to Delaware's stated interest in regulating claims for aiding and abetting breach of fiduciary duty owed to entities organized under Delaware law. In short, this Court should apply Delaware law to the Committee's aiding and abetting claim.[4]

ii.    *In pari delicto* applies under Delaware law.

The Committee never argues that, under Delaware law, the doctrine of *in pari delicto* does not apply to its claims against the North Carolina Defendants. Rather, the Committee's opposition to *in pari delicto* under Delaware law rests entirely on a purported "gatekeeper" exception that would make the otherwise dispositive defense unavailable to the North Carolina Defendants. The problem with the Committee's position is that the relevant authorities describe this exception as applicable to "defendants like auditors," law firms, and attorneys, and the Committee has no evidence that the North Carolina Defendants functioned in a similar capacity. Thus, the Committee's asserted exception is far too narrow to include the North Carolina Defendants.

The Committee begins its discussion of *in pari delicto* under Delaware law with an absolute falsehood: that "the *in pari delicto* doctrine does not bar aiding and abetting claims against defendants who advised or otherwise caused the plaintiff to engage in the conduct that allegedly supports an *in pari delicto* defense." (Opp. at 22.) Indeed, the very case upon which the Committee primarily relies—*Stewart*—states just the opposite. Under Delaware law, *in pari delicto* applies even if the plaintiff "was led into a path of crime by one more culpable." 112 A.3d at 302. In short, *in pari delicto* bars claims against parties that engaged in alleged wrongdoing through advising or otherwise encouraging the plaintiff to breach a fiduciary duty. *See id.*

---

[4] In a footnote, the Committee suggests that this Court should defer the choice-of-law determination "pending the development of a more complete factual record." (Opp. at 17-18.) No such development is necessary because the only facts necessary to decide that Delaware law applies—Kushner and Spitz were fiduciaries of entities organized under Delaware law—are undisputed. So there is no need to defer the choice-of-law determination.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

1    The Committee distorts *Stewart* in other ways, too. (*See* Opp. at 22-25.) The most

2    egregious example is the Committee's attempt to derive from *Stewart* an exception to *in pari*

3    *delicto* that would apply to any party with whom a plaintiff did business, if that party did not

4    disclose 100% of the information in that party's control. (*See id.* at 22-23, 25.) But *Stewart*

5    created no such exception. Instead, the *Stewart* court created an exception to *in pari delicto* for

6    aiding and abetting breach of fiduciary duty claims against "defendants like auditors." 112 A.3d

7    at 318-20. It did so because "non-fiduciaries like auditors, who occupy a position of trust and

8    materially participate in the traditional insiders' discharge of their fiduciary duties, are different

9    from other third parties with whom the corporation may transact business." *Id.* at 320. Here, the

10   Committee has failed to submit any evidence that the North Carolina Defendants occupied a

11   position of trust in relation to the Debtors. Indeed, the Complaint characterizes Covelli as a

12   "slick salesm[a]n." (*See* Complaint, Dkt. 1, at ¶ 2.) Salesmen do not play a role in a buyer's

13   discharge of fiduciary duties. The North Carolina Defendants were nothing like auditors. They

14   were engaged in the sale of investments. This did not put them in position of trust akin to that

15   held by auditors. This did not allow them to materially participate in Kushner and Spitz's

16   discharge of their fiduciary duties. Instead, the North Carolina Defendants were no different

17   from other third parties with whom the Debtors transacted business. Therefore, the exception in

18   *Stewart* does not apply to this case.

19       The Committee attempts to muddle this exception by quoting the *Stewart* court's

20   observation that certain defendants "*created* the unreasonable process and informational gaps

21   that led to the Board's breach of duty." (Opp. at 23 (emphasis in original).) But the *Stewart*

22   court made that statement in analyzing whether the plaintiff's complaint stated a claim for

23   aiding and abetting breach of fiduciary duty, apart from its *in pari delicto analysis. See Stewart*,

24   112 A.3d at 320-23. So the question of whether or not a defendant "created [an] unreasonable

25   process and informational gaps" has no bearing on whether that defendant may assert an *in pari*

26   *delicto* defense.

27       The Committee's interpretation of *Korotki v. Hillar & Arban, LLC*, 2017 Del. Super.

28   LEXIS 256 (Del. Super. Cr. May 23, 2017) is similarly misguided. (*See* Opp. at 23-25.) The

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Committee claims that *Korotki* applies because *in pari delicto* was unavailable in that case,

where the plaintiffs acted based on the defendants' advice and counsel. (Opp. at 23-24.) But

*Korotki* did not even involve a claim for aiding and abetting a breach of fiduciary duty. *See*

2017 Del. Super. LEXIS 256. Instead, it involved a claim for legal malpractice against two law

firms and their attorneys. *See id.* The Committee does not attempt to explain why an exception

to *in pari delicto* for advice given by attorneys—themselves fiduciaries—would apply to non-

fiduciaries involved in an arms-length sales transaction. *Korotki* has no bearing whatsoever on

this case.

In the final analysis, the Committee has failed to identify an applicable exception to *in*

*pari delicto* under Delaware law. Accordingly, the North Carolina Defendants are entitled to

summary judgment on this affirmative defense.

iii.    <u>*In pari delicto* applies under California law.</u>

Even if the Court were to apply California law (which, as discussed above, it should not

do), the North Carolina Defendants would remain entitled to summary judgment on their *in pari*

*delicto* defense. The Committee's argument under California law focuses on the relative

culpability of Kushner and Spitz, as compared to the North Carolina Defendants. (Opp. at 18-

21.) Conveniently, the Committee has now taken to describing Kushner and Spitz's alleged

breaches as merely "negligent." (Opp. at 2, 3, and 21.) This is belied by the way the

Committee's chair—the PBGC—described the same conduct when opposing the North

Carolina Defendants' motion to dismiss in the PBGC Action. There, the PBGC described the

relevant transactions as "fraudulent." (*See* Request for Judicial Notice, Ex. 1, PBGC Brief in

Opposition to Motion to Dismiss in the PBGC Action, at 1-2, 14, and 15.) Kusher and Spitz's

insurance-related investments cannot "work to defraud the Plan of assets" (*id.* at 15) in one case

and be merely "negligent" in another. This Court should disregard the Committee's convenient

characterization of Kushner and Spitz's conduct when it can take judicial notice of how the

Committee's chair characterized that same conduct in duplicative litigation.

Moreover, the Committee ignores a key fact: Kushner and Spitz were the decision-

makers with respect to the insurance-related investments at issue. The North Carolina

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

Defendants offered to sell their services in structuring insurance-related investments. They were the sellers. The Complaint says "slick salesmen." (Complaint, Dkt. 1, at ¶ 2.) Salesmen make proposals. Buyers make decisions. Kushner and Spitz (on behalf of the Pension Plan) were the buyers. Notably, the Committee has not asserted any fraud claims against the North Carolina Defendants, nor has it alleged that Kushner and Spitz made the investment decisions under duress. Absent such fraud or duress (which the Committee has conceded through its pleadings to be absent in this case), it simply is not possible for a seller in an arms-length transaction to be more culpable than the buyer for any damage resulting from the buyer's decision. Common sense dictates that Kushner and Spitz, as the buyers, are at least equally culpable for their purchase decisions as compared to the salesmen and other advocates for the purchases. Therefore, there is no basis to conclude that the North Carolina Defendants have not met any requirement under California law to show "equal culpability" for application of the *in pari delicto* defense.

## II.    The North Carolina Defendants are Entitled to Summary Judgment on the Fraudulent Transfer Claims.

In opposing summary judgment on its fraudulent transfer claims, the Committee has precious little to say. (Opp. at 30-31.) Despite years of discovery, the Committee still refuses to take an affirmative position as to the meaning of the word "Company" in Appendix A to the JTR Letter Agreement. Instead, the Committee falsely criticizes the North Carolina Defendants for not taking a position of their own. (Opp. at 31.) The North Carolina Defendants have long held—and still maintain—their position that the term "Company" in the JTR Letter Agreement unambiguously refers to the Pension Plan.[5] There is no dispute that the only two parties to the JTR Letter Agreement are the Pension Plan and JTR. Kushner's email forwarding the executed JTR Letter Agreement described it as being a contract "between JTR and plan." If, as the Committee intimates, "Company" were intended to refer to the Debtors instead of to the

---

[5] The meaning of the word "Company" is the only issue of contractual interpretation relevant to the North Carolina Defendants' motion for summary judgment. Thus, this Court should ignore the Committee's red herring argument regarding whether Traci Christian and Etaros are included among the "related parties" covered by the indemnification provision in Appendix A.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

Pension Plan, the Pension Plan would have bound the Debtors (non-parties to the contract) to a promise to indemnify JTR and related parties. This interpretation is patently unreasonable, and this Court need not consider it in interpreting the JTR Letter Agreement. *See Coleman v. United Health Services of Georgia, Inc.*, 344 Ga.App. 682, 686, 812 S.E.2d 24 (Ga. Ct. App. 2018) (noting that, under Georgia law, a party to a contract is not allowed to bind a non-party to that contract).

Moreover, it is the Committee who has failed to submit evidence of any interpretation of "Company" as meaning something other than the Pension Plan. Where—as here—the non-moving party bears the burden of proof, and the moving party has shown that the non-moving party lacks evidence from which a jury could find an essential element of the claim, the non-moving party "must set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Here, the Committee has half-heartedly attempted to raise "some metaphysical doubt" regarding the proper interpretation of "Company" in the JTR Letter Agreement. The Committee—which has been attempting to finalize a settlement with Kushner for over three months—could have obtained a declaration from him regarding the proper interpretation of "Company." It did not do so. Instead, the Committee remains non-committal about a fact that will dispose of its fraudulent transfer claims. That is not acceptable at summary judgment, which is "the 'put up or shut up' moment in a lawsuit." *See Mendelson v. Country Coach*, 2007 WL 4811927, *2 n.1 (C.D. Cal. Nov. 19, 2007) (quoting *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *Weinstock v. Columbia University*, 224 F.3d 33 (2d Cir. 2000); *Schacht v. Wisconsin Dep't of Corrections*, 175 F.3d 497 (7th Cir. 1999); *Cox v. Kentucky Dep't of Transportation*, 53 F.3d 146 (6th Cir. 1995)).

Simply put, in opposing the North Carolina Defendants' motion for summary judgment on the fraudulent transfer claims, the Committee chose not to "put up." The Court is left to

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1    impose the other option on the Committee. Therefore, the North Carolina Defendants are

2    entitled to summary judgment on the Committee's fraudulent transfer claims.

3    **III.    The Committee's Opposition Does Not Justify Application of Rule 56(d).**

4    　　　Finally, the Committee claims that summary judgment is premature under Rule 56(d).

5    (Opp. at 31-32.). But the Committee fails to identify any specific evidence that it needs to

6    gather to defeat the summary judgment motion. A non-movant requesting further discovery

7    under Rule 56(d) must "identify by affidavit the specific facts that further discovery would

8    reveal, and explain why those facts would preclude summary judgment." *Security & Exch.*

9    *Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018); *Russell Rd. Food & Beverage, LLC v.*

10   *Spencer*, 829 F.3d 1152, 1157 n.3 (9th Cir. 2016). This is a two-part process. "The facts sought

11   must be 'essential' to the party's opposition to summary judgment and it must be 'likely' that

12   those facts will be discovered during further discovery." *Stein*, 906 F.3d at 833. The mere fact

13   that discovery is incomplete is insufficient; the non-movant must demonstrate why it is

14   impossible to oppose the motion without such evidence. *See id.*

15   　　　The Committee's argument falls woefully short of this two-part standard. The Kornfeld

16   Declaration—upon which the Committee relies—identifies many depositions yet to be taken,

17   but only mentions topics to be explored in those depositions. It does not identify any specific

18   facts to be adduced. For example, the Kornfeld Declaration accurately states that Lesley,

19   Thomas, Schwarz & Postma, Inc. ("Lesley Thomas") and Bill Meehan have yet to be deposed,

20   but it does not identify any fact that is likely to be revealed through those depositions.

21   　　　As importantly, neither the Kornfeld Declaration nor the Committee's brief explains

22   why discovery as to various topics—much less discovery of additional facts—are **essential** to

23   opposing the North Carolina Defendants' summary judgment motion. There is no dispute that

24   discovery is incomplete in this case. But the essence of a Rule 56(d) request in an explanation

25   of **why** a particular discovery activity is necessary to respond to a Rule 56 motion. Kornfeld

26   does not explain how the Committee is unable to oppose the instant motion without particular

27   facts to be adduced from depositions that the Committee would like to take. Thus, for example,

28   the Kornfeld Declaration claims that the "information" obtained from the Lesley Thomas and

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

1   Bill Meehan depositions is important to establish the Committee's claims, but it does not

2   explain how the information it seeks to gather from Lesley Thomas and Mr. Meehan matter for

3   the purpose of responding to the "no damages," argument in the North Carolina Defendants'

4   summary judgment motion. Similarly absent are references to the necessity for discovery from

5   Lesley Thomas and Mr. Meehan to respond to the *in pari delicto* issues presented by the instant

6   motion. All the Committee has done is identify topics on which it would like to depose Lesley

7   Thomas and Mr. Meehan. That does not meet the two-part standard set forth in *Stein*.

8          Although the parties most certainly need more discovery if there is going to be a trial,

9   the only question before the Court under Rule 56(d) is whether more discovery is needed for the

10  non-movant to file an opposition to a Rule 56 motion. Here, the answer is "no" because the

11  Committee currently has access to: (1) the Debtors' own damages; (2) the Debtors' own

12  culpability, and (3) the Debtors' own supposed obligations under an agreement, which are the

13  three facts that govern the instant motion. The non-moving party under Rule 56 cannot

14  demonstrate a "need" for discovery when the facts it seeks to marshal are already accessible to

15  that party; by definition, further discovery is not needed to reveal those facts. *See Stein*, 906

16  F.3d at 833 (non-movant making Rule 56(d) request must "identify by affidavit the specific

17  facts ***that further discovery would reveal*** . . .") (emphasis added).

18         In sum, the Committee has not identified specific facts it expects to discover that will

19  defeat the pending motion for summary judgment. Indeed, the Committee's opposition brief

20  and related factual filings demonstrate that it has everything necessary to file a thorough

21  opposition brief. The Committee's Rule 56(d) argument fails as a result.

22  ///

23  ///

24  ///

25

26

27

28

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1

## Conclusion

2        For the foregoing reasons, as well as those stated in their initial motion for summary

3  judgment, the North Carolina Defendants respectfully request that this Court grant summary

4  judgment in North Carolina Defendants' favor on each of the Committee's claims for aiding

5  and abetting breach of fiduciary duty, fraudulent transfer under 11 U.S.C. § 548(a)(1)(B), and

6  fraudulent transfer under 11 U.S.C. § 544(b) and California Civil Code §§ 3439.04, 3439.05,

7  and 3439.07, along with such other and further relief as the Court deems just and proper.

8

9

10

DATED:  September 4, 2019                  SMILEY WANG-EKVALL, LLP

11

12                                         By:    *Robert S. Marticello*
                                                ROBERT S. MARTICELLO
13                                              Local Counsel for Defendants Richard J. Covelli,
                                                JTR, LLC, C & C Marketing LLC, and C2
14                                              Advisors, LLC

15

16                                         LOCKE LORD LLP

17                                              MATTHEW T. FURTON
                                                Attorneys for Defendants Richard J. Covelli,
18                                              JTR, LLC, C & C Marketing LLC, and C2
                                                Advisors, LLC

19

20

21

22

23  81294141v.6 1004240/00007

24

25

26

27

28

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Defendants Richard J. Covelli, JTR, LLC, C2 Advisors, LLC, and C & C Marketing LLC's Reply in Support of Their Motion for Summary Judgment** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **09/04/2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **09/04/2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal
Honorable Mark S. Wallace
United States Bankruptcy Court
411 West Fourth Street, Suite 6135
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/04/2019 | Lynnette Garrett | /s/ Lynnette Garrett |
| --- | --- | --- |
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Erinn M Contreras    econtreras@sheppardmullin.com, nsaucedo@sheppardmullin.com
- Raphael Cung    rcung@callahan-law.com, jeggleston@callahan-law.com;deisenbrey@callahan-law.com;mmartinez@callahan-law.com
- Alan J Friedman    afriedman@shbllp.com, lgauthier@shbllp.com
- Matthew T Furton    mfurton@lockelord.com, cpaul@lockelord.com;chicagodocket@lockelord.com
- Alan J Kornfeld    akornfeld@pszjlaw.com, mdj@pszjlaw.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Marc S Pfeuffer    pfeuffer.marc@pbgc.gov, efile@pbgc.gov
- Christopher B Queally    cqueally@callahan-law.com, jluirette@callahan-law.com
- James M Sabovich    jsabovich@callahan-law.com, ksalour@callahan-law.com;jkirwin@callahan-law.com;rcung@callahan-law.com;bmccormack@callahan-law.com;erichards@callahan-law.com;SRobinson@callahan-law.com
- George E Schulman    GSchulman@DGDK.Com, danninggill@gmail.com;gschulman@ecf.inforuptcy.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Elissa A Wagner    ewagner@pszjlaw.com
- Brandon J Witkow    bw@witkowlaw.com, tg@witkowlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**